## WARREN *v*. STATE.

Opinion delivered April 8, 1912.

1. TRIAL—ARGUMENT OF PROSECUTING ATTORNEY.—In a prosecution of a negro man for burglary and assault with intent to rape, the prosecuting attorney told the jury that "a verdict of acquittal is equivalent to telling your wives and daughters that there is little protection for them because the defendant can introduce a number of his negro friends to prove an alibi," etc. Upon defendant objecting, the court told the jury not to be influenced by the fact that defendant is a negro and the prosecuting witness a white woman. Whereupon the prosecuting attorney said: "Because he is a negro has nothing to do with it; but

if he is guilty, it is your duty to convict him, whether he is white or a negro." *Held* that there was no prejudicial error in the argument. (Page 169.)

2.  WITNESS—CORROBORATION.—Where the prosecuting witness in a prosecution for assault with intent to rape testified that she identified defendant as the guilty person, it was not competent to prove by other witnesses that she identified defendant, in the absence of any effort to impeach her testimony. (Page 170.)

3.  TRIAL—NECESSITY OF PROMPT OBJECTION TO EVIDENCE.—Where incompetent testimony was introduced without objection, a subsequent motion to exclude such testimony is addressed to the court's discretion. (Page 171.)

Appeal from Pulaski Circuit Court, First Division; *Robert J. Lea,* Judge; affirmed.

*J. H. Carmichael,* for appellant.

1.  The court that sits for the correction of error must examine the evidence and discharge the defendant unless that evidence demonstrates to their satisfaction that the defendant is guilty beyond all reasonable doubt, and in this respect they are not concluded by the verdict of the jury.  172 Ill. 367; 72 Conn. 635; 117 Ga. 230; 67 New Jersey Law, 223; 142 Ind. 276; 50 Mich. 239; 138 Mo. 112; 13... Mo. 112; 130 Okla. 633.

2.  It was error to instruct the jury that if they were not satisfied beyond a reasonable doubt that the defendant was guilty they should acquit him.  It was the duty of the court to instruct the jury that they must acquit and that they were bound to acquit the defendant.  157 Ill. 109; 34 Kan. 438; 75 Mich. 21; 85 Va. 671.

3.  Every man should be acquitted unless his guilt is proved beyond a reasonable doubt.  172 Ill. 367; 1 McCord, 482; 55 Ark. 244.

4.  The burden of proof throughout the trial rests upon the State to prove its case beyond reasonable doubt; and when the defendant has raised the defense of an alibi, nevertheless the State must prove beyond all reasonable doubt that the alibi is false.  23 Mont. 532; 55 Ark. 244; 54 Ark. 188; 47 Neb. 403; 58 Ala. 258; 53 Mich.; 1 Utah 343.

5.  The court erred in refusing to instruct the jury that the accused should not be convicted, even though the evidence established a strong suspicion or a probability of his guilt.

34 Neb. 756; 1 Wheeler, Criminal (N. Y.) 21; 19 Texas 214; 17 Texas App. 191.

6. The court erred in instructing the jury that by a moral certainty was meant such a certainty as the jury would be willing to act upon in the important affairs of their own life. 45 Miss. 572; 80 Mass. 55-57; 45 Fed. 425.

7. That part of the instruction which states that "it is for you to determine" and "that it was done by somebody" is a charge not shown to have been requested by either of the parties, and is a charge invading the province of the jury, and upon the effect of the evidence, and therefore erroneous.

8. The prosecuting attorney made an improper remark to the jury, whereby the minds of the jury were influenced to the prejudice of the defendant, which prejudice was not removed by the attempt of the court to instruct the jury to wipe out such prejudice. 124 Mo. 460-464;. 93 Mich. 625-8; 92 Cal. 282; 43 Texas 233; 73 N. C. 590; 36 App. Div. 389; 55 N. Y. Supp. 410-17; 110 Ill. App. 250.

*Hal L. Norwood,* Attorney General and *Wm. H. Rector,* Assistant, for appellee.

1. The argument of the State's attorney was not prejudicial. 48 Ark. 106; 58 *Id.* 358, 473; 61 *Id.* 137; 65 *Id.* 119; 71 *Id.* 62; 81 *Id.* 173; 94 *Id.* 514; *Ib.* 548; 95 *Id.* 321; 73 *Id.* 453.

2. There is no error in the court's charge, and the verdict is supported by the evidence.

McCULLOCH, C. J. The grand jury of Pulaski County returned two indictments against the defendant, John Henry Warren, one for burglary and the other for assault with intent to commit rape. In the burglary case he is accused of having entered a certain dwelling house in the city of Little Rock for the purpose of committing the crime of rape, the same crime which he is accused in the other case of attempting to commit. The same testimony being involved in each case, the two cases were heard together before the same jury and upon the same evidence, and the jury returned a verdict of guilty in each case. The lady who is alleged to have been assaulted was visiting her son-in-law, a Mr. Gray, in the city of Little Rock, and during the night time some one entered the bedroom

where she was sleeping and attempted to assault her, evidently
with intent to commit a rape. She testified that when she
awoke she saw the man in the room, standing at her bedside
with a pistol in his hand, and that he accosted her, threatening
to kill her if she made an outcry; that she said to him, "Take
my money, and please let me alone," whereupon he placed his
hand on her person, and replied, "I don't want your money;
I want this;" that her infant grandchild was in the bed with
her and began to cry, and the man backed out of the room. Her
son-in-law, Mr. Gray, was sleeping in the next room, and she
called to him, but upon examination of the premises they could
not find the man in the house. Fresh tracks were found in the
soil under the window, and after the defendant was arrested
his shoe was placed in the track and was found to fit it. The
lady testified that the man was a negro, and she positively
identified defendant as the person who was in the room and
assaulted her, he being a young negro, about twenty years old.
Soon after the assault was committed, Mr. Gray notified
the police department, and defendant was arrested soon after
daylight at a rooming house in the same neighborhood. The
lady testified that, after the defendant was arrested the next
day, she was notified and went down to the police headquarters,
and walked into the room where this defendant and two other
negroes were standing together and immediately identified
defendant as the one who had assaulted her. During the
further introduction of evidence in chief, the court permitted
the State to introduce two police officers, who testified con-
cerning the identification of defendant by the lady at police
headquarters, and stated that they stood the defendant and
two other negro men up against the wall, and that as soon as
the lady came into the room she immediately identified the
defendant as the man who had assaulted her the night before.
No objections were made to any of this testimony, but at the
close of all the testimony in the case, and immediately before
the court instructed the jury, defendant's counsel asked the
court to exclude the testimony of the police officers as to the
identification. No request was made for the exclusion of the
testimony of the lady herself as to her identification at police
headquarters.

The evidence is sufficient to warrant the conviction in both

.cases. It is sufficient to show that a man entered the house in the night time with intent to commit rape upon the person of the lady named, and that he actually assaulted her with intent to commit that crime, but desisted on account of the outcry of the infant and his fear of detection.

The first and principal ground for reversal raised by counsel is as to alleged improper argument of the prosecuting attorney, whose earnest appeal is in part copied in the bill of exceptions, and who, among other things, said to the jury that "a verdict of acquittal is equivalent to telling your wives and daughters that there is little protection for them because the defendant can introduce a number of his negro friends to prove an alibi, that you should take above all other evidence. Alibi evidence is dangerous evidence because a set of negroes might get together and swear anything to protect a defendant." And also this: "Suppose it was your mother, your sister, or wife, who had been outraged, and she should come before a jury and swear positively that that was the negro who had outraged her, and in the face of this positive identification and all other facts proved in this case, the jury acquitted the defendant because some negro testified to an alibi, or libi, how would you feel?" An objection was made by counsel for defendant, whereupon the court made the following statement to the jury: "This defendant ought not to be convicted because he is a negro, and he should not be acquitted because he is a negro; he ought to be acquitted or convicted according to the truth of the case, treating him just like you would a white man. You should not be influenced by the fact that he is a negro and the prosecuting witness is a white woman. In other words, the State must prove beyond a reasonable doubt that he is the man who committed the crime as charged; if it does not, it is your duty to turn him loose; if it does, it is your duty to convict him." The prosecuting attorney then proceeded with his argument, and among other things said to the jury that "because he is a negro has nothing to do with it; but, if he is guilty, it is your duty to convict him, whether he is white or a negro."

Now, it is earnestly argued that this was an appeal to race prejudice, and also an appeal calculated to arouse the passion and prejudice of the jury on account of the defendant being a

negro and on account of the character of the crime with which he stood charged. It is by no means clear that the language used by the prosecuting attorney was such as was calculated to arouse the prejudices of the jury against the defendant on account of his race. But, even if we should place that construction upon it, it appears to us that the learned circuit judge did all that was necessary to allay that prejudice and to fully bring to the sense of the jury their duty in considering the merits of the case. The remarks of the court were well calculated to remove any possible feeling of prejudice engendered in the minds of the jury, if any, and to impress fair-minded and intelligent men with their duty to give the defendant a fair and impartial trial, regardless of his race or the particular crime with which he was charged. On top of this, the prosecuting attorney candidly stated to the jury that the fact that the defendant was a negro had nothing to do with the case, and this, we think, was calculated to relieve the argument of any unfairness. The recent decisions of this court on that subject are so numerous that it is unnecessary to cite them. In view of what we have so often said, that these matters which must to some extent be left to the fair discretion of the trial court, it is unnecessary to discuss the assignment further. We are of the opinion that no prejudicial error appears to have been committed in this respect.

It is next insisted that the court erred in refusing to exclude the testimony of the two officers as to the identification of defendant. This character of proof is referred to in the books as extrajudicial identification, and is generally held to be inadmissible. *Reddick* v. *State*, 35 Tex. Cr. Rep. 466; *Murphy* v. *State*, 41 Tex. Cr. Rep. 120; *State* v. *Egbert*, 125 Iowa 443; *State* v. *Houghton*, 43 Ore. 125; *People* v. *Johnson*, 91 Cal. 265; *People* v. *McNamara*, 94 Cal. 509. Prof. Wigmore says that such testimony is admissible for the purpose of restoring the credit of an impeached identifying witness, that is to say, where the witness is impeached by proof of prior contradictory statements showing that the identification is a recent contrivance. 2 Wigmore, 1129, 1130. His views on this subject are not in accord with the weight of authority, as we attempted to show in *Burke* v. *State*, 78 Ark. 271, and we there declined to follow them. But nowhere, so far as we can ascertain, has

it ever been held that a so-called "extrajudicial identification" is admissible as original testimony; and it was, therefore, in any view of the case, inadmissible, for there was no attempt to impeach the witness by contradictory statements, or otherwise.  The testimony was introduced as original evidence, and it was clearly inadmissible, for it was not competent to corroborate the identifying witness by proof of former identification.

We are of the opinion, though, that the objection was not interposed in apt time.  Where incompetent evidence is offered, it is the duty of the party to object immediately, or at least within a reasonable time.  If he fails to object at the time, and afterwards asks for the exclusion of the incompetent evidence, he can not demand its exclusion as a matter of right, but the request addresses itself to the discretion of the court. Thompson on Trials, § 7016.  A party can not speculate upon what the testimony of a witness will be and then at the end of the trial demand as a matter of right that the incompetent testimony be excluded.  *Phelan* v. *Bonham*, 9 Ark. 389; Thompson on Trials, § 700; *Maxwell* v. *Hannibal & St. J. Rd. Co.*, 85 Mo. 95.  It is within the province of the court at any time to strike out incompetent testimony when requested to do so; but, as it is a matter of discretion with the court whether it will exclude the testimony at a subsequent stage of the trial, an abuse of the discretion must be shown before this court will reverse.  In the present case the objectionable testimony was introduced during the State's examination of witnesses in chief.  The defense introduced numerous witnesses, including the defendant himself, in an effort to establish an alibi, and after the taking of testimony had been closed by both sides the request was made for the exclusion.  We can not say that the court abused its discretion in refusing to exclude the testimony at that stage of the proceedings.

Finding no error in the record, the judgment in each case is affirmed.