CLINGHAM *v.* STATE.

4359                                    182 S. W. 2d 472

Opinion delivered October 2, 1944.

*Kent Jackson,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

ROBINS, J. Appellant, charged by information with the crime of murder in the first degree, for the killing of Roy Curtis, was tried before a jury and found guilty of the offense charged. From judgment of the lower court imposing the death penalty in accordance with the jury's verdict he prosecutes this appeal.

The evidence discloses that appellant, a negro, on the night of February 5, 1944, at the home of his sister in West Memphis, where he was living at the time, became involved in a quarrel with James Webber, another negro who was visiting appellant's sister. Leaving his sister's house appellant went about three blocks to the home of a relative, where he obtained a shotgun and five shotgun shells. Thus armed, he returned and began firing into the windows of his sister's house. As to this he was asked when on the witness stand: "You saw him (James Webber) in there and shot at him?" And appellant answered: "Yes, sir." He further testified that he thought Webber, after the first shot was fired, went into another room and he shot again into the window of that room.

While appellant was firing the shots into the windows of his sister's home, Roy Curtis, a deputy sheriff, drove up, parked his car in a nearby street and went upon the porch of a small store located in front of the home of appellant's sister. Mr. Curtis stood on the porch a moment, then came down from the porch and, according to appellant's version, threw a flashlight on appellant and began firing at appellant with a pistol, whereupon appellant fired on Curtis, fatally wounding him. The effect of the testimony of an eyewitness was that Curtis' first shot and the fatal shot from appellant's gun were fired simultaneously. Appellant was wounded in the exchange of shots, and after he fell to the ground he attempted to load the shotgun with the two remaining shells, but was disarmed before he could do so.

For grounds of reversal appellant urges: 1. That the evidence was insufficient to justify the verdict. 2. That the court erred in refusing to give appellant's requested instruction No. 15, as follows: "You are in-

structed that a sheriff or other peace officer has no right to arrest a citizen without a warrant of arrest except for an offense committed in the presence of the officer and then only at the time of the offense. If the officer attempts to make an arrest under other circumstances he acts at his own risk and the citizen may resist such arrest even to the extent of killing such officer if it reasonably appears necessary to protect his own person from assault or great bodily harm.''

## I.

The lower court properly instructed the jury as to the law of self-defense, and appellant does not complain here of any error of the lower court in declaring the law as to appellant's right to defend himself. Proper instructions requested by appellant, defining the different degrees of unlawful homicide, were also given by the trial court.

It is urged, however, by appellant that the jury improperly ignored the testimony deemed by appellant as supporting his theory of self-defense; and it is also contended on his behalf that, since appellant did not intend to kill Mr. Curtis, he could not in any event be guilty of murder in the first degree.

The right of self-defense could not have been properly invoked by appellant, even if Webber had been the one who began the firing, and who was killed. Under his own statement of the affair, appellant left the scene of his quarrel with Webber, went a distance of about three blocks, secured a shotgun and ammunition, returned to the house where Webber was and began firing at him. If, under these circumstances, Webber had come out of the house and opened fire at appellant, appellant would not thereby have been justified in slaying Webber.

In Warren on Homicide, Vol. 1, § 151, the rule is thus expressed: ''The general rule is that one cannot provoke an attack, bring on a combat, and then slay his assailant, and claim exemption from the consequences on the ground of self-defense. No one can avail himself of the plea of self-defense, in a case of homicide  .  .  .

when the defendant was himself the aggressor, and willfully brought on himself, without legal excuse, the necessity for the killing."

Judge BATTLE, in the case of *Carpenter* v. *State,* 62 Ark. 286, 36 S. W. 900, discussing the right of self-defense on the part of one who has provoked a difficulty, said: "He cannot provoke an attack, bring on the combat, and then slay his assailant, and claim exemption from the consequences of killing his adversary, on the ground of self-defense."

The fact that appellant may have believed that he was firing at Webber, or may not have known that he was firing at an officer, does not excuse or mitigate his offense. Where one, in an attempt to murder, slays by mistake a person other than the intended victim, he is nevertheless guilty of murder. *Ringer* v. *State,* 74 Ark. 262, 85 S. W. 410; *Brooks* v. *State,* 141 Ark. 57, 216 S. W. 705; *Daniels* v. *State,* 182 Ark. 564, 32 S. W. 2d 169; 26 Am. Jur. 179.

## II.

The lower court did not err in refusing to give appellant's requested instruction No. 15.

In the first place, according to appellant's testimony, Mr. Curtis did nothing to indicate that he was attempting to make an arrest. There was no testimony whatever to the effect that Mr. Curtis made any attempt to arrest appellant. The instruction requested was abstract and without any proof to justify the giving of it. The refusal by a trial court to give a requested instruction is not error where there is no testimony calling for such an instruction, even though the requested instruction correctly sets forth the law. *Harris* v. *State,* 34 Ark. 469; *Beavers* v. *State,* 54 Ark. 336, 15 S. W. 1024; *Stevens* v. *State,* 117 Ark. 64, 174 S. W. 219; *Sims* v. *State,* 171 Ark. 799, 286 S. W. 981.

In the second place, at the time the deceased, a peace officer, came on the scene, appellant was making a felonious assault on Webber, and Mr. Curtis had the right,

under the circumstances, to arrest appellant without a warrant.

The inherent weakness of appellant's position in this case is that, immediately before he took the life of Mr. Curtis, appellant, under his own admission, had been engaged in the commission of a felony, and therefore he had no right to kill an officer, or anyone else, who attempted to interfere with his felonious act. As was said by Judge BUTLER in the case of *Spear* v. *State,* 184 Ark. 1047, 44 S. W. 2d 663: "It is well settled that one who, while in the actual perpetration of a felony by violence, kills another person who is attempting to prevent the felony, cannot plead self-defense. 30 C. J. 49. This would be true even though the person attempting to prevent the felony and who was killed began firing first."

We have carefully examined the record in this case and find no error prejudicial to appellant. The judgment of the lower court is affirmed.